```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                     OCALA DIVISION
```

JAMES BEAM,

                Plaintiff,

vs.                                  Case No. 5:09-cv-535-Oc-36DNF

A. PEREZ-CARRILLO, *Dentist*, and
DIMITRA GLANTON, *Dental Assistant*,

                Defendant.
_____

## **OPINION AND ORDER**

### **I. Background**

Plaintiff James Beam, who is an inmate within the Florida Department of Corrections, initiated this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 (Doc. #1, Complaint) on December 3, 2009, alleging that Defendants violated Plaintiff's constitutional rights by showing deliberate indifference to his serious dental condition while Plaintiff was incarcerated at Lake Correctional Institution ("Lake C.I."). *See generally* Complaint. In response, Defendants filed a Motion for Summary Judgment (Doc. #24, Motion)[1] on October 21, 2010, attaching

---

[1]Defendants filed a pleading entitled "Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgement." The pleading attached 75 pages of exhibits. Consequently, the Court construed the pleading as a Motion for Summary Judgment filed pursuant to Rule 56 and provided notice to Plaintiff that it intended to address the claim on this basis. *See* November 2, 2010 Order (Doc. #25). The Court further directed *pro se* Plaintiff to file a response to the Motion for Summary Judgment and advised Plaintiff of the requirements of Rule 56 in preparing his response

(continued...)

various supporting exhibits. Despite twice being directed by the Court to file a response and being appraised of how to properly respond to a Rule 56 motion, *see* Docs. #12 and #25, Plaintiff did not file a response to the Motion, and the time for doing so has expired. *See* docket. Consequently, the Court deems the Motion ripe for review without the benefit of a response from Plaintiff.

According to the Complaint, Plaintiff requested dental services for his "rotten teeth" and "gum desiese[sic]/infection" but was not provided proper dental treatment. Complaint at 8, ¶1. Plaintiff alleges that he requested dental treatment on October 20, 2008, but did not receive any dental treatment until "August and September 2009." *Id.* at 8-9, ¶2. During this ten-month delay, Plaintiff claims that he unnecessarily endured "pain and suffering." *Id.* Specifically, Plaintiff states that he "would often be awake all night pacing the floor" because "it hurt so bad." *Id.* at 9, ¶4. After his teeth were pulled, Plaintiff states that the dentist, Dr. Perez-Carrillo, continued to deny him proper dental treatment, in that the Defendant failed to provide Plaintiff with a partial dental plate so that Plaintiff could eat food without experiencing further pain. *Id.* ¶3. Plaintiff attaches to his Complaint a copy of the grievance and appeal he submitted in connection with this request for dental treatment, (Doc. #1 at 11-

---

[1](...continued)
to the motion. *Id.*

14), and an inmate request form submitted by Plaintiff requesting to be sent to Lake Butler for dental services with accompanying response by correctional officials. *Id*. at 15. As relief, Plaintiff seeks monetary damages in the amount of $25,000 from each Defendant, as well as injunctive relief, namely an order directing the Defendants to fit Plaintiff with dentures. *Id*. at 10.

Defendants seek summary judgment on the basis that Plaintiff can not demonstrate an Eighth Amendment violation. Motion at 11. In support of their Motion, Defendants submit the following exhibits: Plaintiff's Inmate Population Information Detail (Exh. A); the Affidavit of A. Perez-Carrillo, DMD, the Senior Dentist at Lake C.I., dated September 30, 2010 (Exh. B), attaching portions of Plaintiff's dental records and grievances regarding his dental treatment (Exhs. B1-B12); the Declaration of Dimitra Glanton, a dental assistant at Lake C.I., dated October 18, 2010 (Exh. C), attaching portions of Plaintiff's dental records (Exhs. C1-C2); a copy of the Health Services Inmate Orientation Handbook (Exh. D); an Affidavit of Dr. Thomas E. Shields, II, DDS, CCHP, the Director of Dental Services for the Department of Corrections of Florida, dated September 29, 2010 (Exh. E), along with relevant copies of Plaintiff's dental records (Exh. E1-E13); Plaintiff's "Dental Treatment Record" for the period dated June 29, 2009 through September 30, 2010 (Exh. F). For the reasons set forth *infra*, the

Court finds that, based upon the record before the Court, Defendants are entitled to summary judgment as a matter of law.

## II.   Applicable Law

### A.   Summary Judgment Standard

"Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Moton v. Coward,* 631 F.3d 1337, 1341 (11th Cir. 2011)(internal quotations and citations omitted).  *See also*, Fed. R. Civ. P. 56(c)(2).  "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial."  *Moton*, 631 F.3d at 1341 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The standard for creating a genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment," *Chapman v. Al Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc) (emphasis added), not to make all *possible* inferences in the non-moving party's favor.

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, *i.e.*, affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a

genuine issue for trial." *Beard v. Banks*, 548 U.S. 521, 529 (2006)(citations omitted); *Celotex*, 477 U.S. at 322; *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party. *Beard*, 548 U.S. at 529 (citations omitted); *Shotz v. City of Plantation, Fl.*, 344 F.3d 1161, 1164 (11th Cir. 2003). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Cuesta v. School Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In the summary judgment context, however, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney. *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002).

**B.  Eighth Amendment- Deliberate Indifference Standard**

In the prison context, "[t]he Eighth Amendment can give rise to claims challenging specific conditions of confinement, the excessive use of force, and the deliberate indifference to a prisoner's serious medical needs."  *Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th Cir. 2010)(citations omitted).  An inmate must establish "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" in order to prevail on an Eighth Amendment claim.  *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).  This showing requires the inmate to demonstrate two distinct prongs--an objective prong and a subjective prong. *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003) (citing *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000)).

First, an inmate must show that he had an "objectively serious medical need," the objective prong.  *Id.*  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.*  (citations omitted).  "The medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm."  *Id.*

Second, an inmate must establish that a defendant acted with "deliberate indifference" to his serious medical need, the subjective prong.  This requires the inmate to establish the following elements:  (1) that the prison official had subjective

knowledge of a risk of serious harm; (2) that the prison official disregarded that risk; that the prison official's conduct was more than gross negligence. *Burnette v. Taylor*, 533 F.3d 1325, 1339 (11th Cir. 2008). "Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007)(quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). Further, each individual defendant is "judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d at 1331.

When a prison official eventually provides medical care, the prison official's act of delaying the medical care for a serious medical need may constitute an act of deliberate indifference. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *Harris v. Coweta County*, 21 F.3d 388, 393-394 (11th Cir. 1994); *Brown v. Hughes*, 894 F.2d 1533, 1537-39 (11th Cir. 1990). In determining whether the length of the delay violates the constitution, relevant factors for the Court to consider include the nature of the medical need and the reason for the delay. *McElligott*, 182 F.3d at 1255. The Court should consider whether the delay in providing treatment worsened the plaintiff's medical condition, and as such "[a]n

inmate who complains that delay in medical treatment [rises] to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay." *Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1187 (11th Cir. 1994), *abrogated on other grounds, Hope v. Pelzar*, 536 U.S. 730 (2002). However, the United States Supreme Court has emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105.

### III. Undisputed Facts and Conclusions of Law

The following excerpt from Defendants' Motion sets forth the chronological summary of Plaintiff's dental treatment at Lake C.I., during the relevant time period set forth in the Complaint as supported by the record:

> On February 7, 2008, Plaintiff was received into the Florida Department of Corrections. Exh. E. Plaintiff was examined by a staff dentist on February 29, 2008. *Id*. The examination revealed that Plaintiff had an existing upper partial plate (dentures). *Id*. There was no indication that Plaintiff required any extractions, however, restorations were recommended for teeth numbers 4, 5, 6, 11, 20, and 18. *Id*. The record does not indicate that Plaintiff complained of pain or that he required emergency dental care. *Id*.

> On March 28, 20[08], Plaintiff was transferred to Lake C.I. Exh. E. On April 2, 2008, Plaintiff's records were reviewed by a Senior Dentist at Lake C.I., William G. Newton. Exh. E. Subsequent to the review, Plaintiff was given a dental orientation, which included information regarding the process for seeking emergency, urgent non-emergency (sick-call), and routine dental care. *Id*. Plaintiff was informed of the dental office's sick call hours and given instructions on maintaining proper oral

hygiene. *Id*. No complaints or issues were noted in Plaintiff's dental record on that date. *Id*.

On June 10, 2008, Plaintiff submitted an inmate request seeking standard dental care. Exh. E. In his request, Plaintiff stated that he was in need of a cleaning and some fillings. *Id*. He also stated that he had three teeth that might need to be extracted. *Id*. He did not complain of any pain or indicate that he needed emergency care. *Id*. Plaintiff requested to be placed on the dental appointment list. *Id*. Plaintiff was given an approximate wait time of three months and was instructed that should he have any dental problems prior to his appointment, sick-call was available to him for immediate care. *Id*.

On July 14, 2008, Plaintiff filed a subsequent inmate request stating that he needed three teeth pulled and requesting that he be placed on "sick call." Exh. E. Plaintiff did not state he was experiencing pain or discomfort. *Id*. On July 17, 2008, a response was issued to Plaintiff informing him that call outs were not provided for sick-call and that he needed to be present at sick-call to receive assistance. *Id*.

On July 28, 2008, Plaintiff was examined by Dr. Perez-Carillo. Exh. E. Dr. Perez-Carillo reviewed Plaintiff's health questionnaire, examined Plaintiff, and determined that Plaintiff's teeth numbers 24, 25, and 26 required extractions. *Id*. Upon receiving consent from Plaintiff, Dr. Perez-Carillo extracted the above referenced teeth. *Id*. Plaintiff was given a pre-treatment rinse and both topical and local anesthetics prior to the extractions. *Id*. Plaintiff tolerated the procedure well and was prescribed Ibuprofen 200mg for any subsequent pain and discomfort. *Id*.

On September 26, 2008, Plaintiff was given a complete dental exam, which included x-rays and the development of an individualized treatment plan. Exh. E. Plaintiff's x-rays demonstrated significant bone loss which was attributed to the advance stages of periodontal disease. *Id*. Periodontal disease, if left untreated, leads to tooth mobility, however, it is rarely painful. *Id*. As a result of Plaintiff's advanced stage in the disease, he was exhibiting tooth mobility. *Id*. Dr. Perez-Carillo developed a treatment plan for Plaintiff which included a cleaning, a root planning, which is a procedure to

clean under the gum line, two fillings, and several extractions. *Id*. Plaintiff was to be re-evaluated for more extractions after a periodontal examination was administered. Once all required dental procedures were completed, Plaintiff would be fitted for partial plates. *Id*. Dr. Perez-Carillo noted on Plaintiff's dental records that Plaintiff exhibited very poor oral hygiene. *Id*.

On October 21, 2008, Plaintiff filed an inmate request wherein he claimed that he had a gum infection and that the dentist removed his teeth without the use of an anesthetic. Exh. E. Plaintiff requested that he be sent to Lake Butler to have all of his teeth pulled and that he did not request to see the dentist. *Id*. The inmate request was answered by Ms. Glanton. *Id*. Ms. Glanton informed Plaintiff that anesthetics are provided for dental procedures as needed and that a referral to Lake Butler would be requested as necessary. *Id*. Inmates are only referred to Lake Butler for extensive or specialized treatment. *Id*. Plaintiff's condition is not one that requires specialized treatment and may be adequately addressed by his treating dentist at Lake C.I. *Id*.

On January 14, 2009, Plaintiff was given a scaling, which is a deep cleaning of the teeth along the root of the teeth into the periodontal area. Exh. E. During that visit, Dr. Perez-Carillo prescribed Ibuprofen 400 mg to assist Plaintiff with any pain he might experience as a result of the cleaning and Doxycycline, a specific antibiotic used to treat periodontal disease. *Id*.

On April 16, 2009, Plaintiff submitted a formal grievance stating that while he was seen several times by the dentist; he was still not receiving the treatment he felt he needed. Exh. E. Plaintiff stated he was in constant pain and needed his teeth pulled. *Id*. Dr. Perez-Carillo responded to Plaintiff's grievance informing him that in an inmate request[,] dated October 20, 2008, he stated that he did not request to be seen by the dentist, instead, that he wanted to be sent to Lake Butler to have his teeth removed. *Id*. She also informed Plaintiff that his grievance was denied as his condition did not necessitate a referral to Lake Butler. *Id*.

On April 30, 2009, Plaintiff submitted a grievance appeal to the Office of the Secretary reiterating his claims that he was not provided the treatment he felt he needed

and that his teeth needed to be pulled. Exh. E. On June 24, 2009, Plaintiff's grievance appeal was denied and stated that investigation into the matter revealed that Plaintiff had been placed on a treatment plan in January 2009. Exh. E. The response further stated that it was the responsibility of his treating dentist to determine the appropriate treatment regimen. *Id*. Plaintiff was instructed to address his concerns with his treating dentist during his upcoming appointment. He was given the option to attend sick-call for immediate care if he was experiencing problems. *Id*.

On June 16, 2009, Plaintiff was examined by Dr. Perez-Carillo, and pursuant to Plaintiff's treatment plan, teeth numbers 22 and 23 were extracted. Exh. E. Plaintiff was given a pre-treatment rinse and both topical and local anesthetics prior to the extractions. *Id*. Plaintiff tolerated the procedure well and was given Ibuprofen 200mg for any pain or discomfort. *Id*.

On June 29, 2009, Dr. Perez-Carillo extracted teeth numbers 27 and 30 following the same procedure indicated in paragraph 11. Exh. E. During that visit it was discovered that Plaintiff had developed a cyst underneath one of his teeth as a result of his poor oral care. *Id*. The cyst was removed at that time. *Id*. Plaintiff tolerated the procedure well and was given Ibuprofen 200mg for any pain or discomfort. *Id*.

On June 30, 2010, Plaintiff received his yearly examination. Exh. E. On July 15, 2010, Plaintiff received a periodontal examination, which is the measuring of the spaces between teeth to ascertain the progression of periodontal disease. *Id*.

On July 22, 2010, Dr. Perez-Carillo was transferred to another Institution and was no longer responsible for Plaintiff's dental care. Exh. E.

On September 30, 2010, Plaintiff refused dental treatment. Exh. F.

Motion at 3-8.

Plaintiff's assertion that he was completely denied any dental care from October 20, 2008, until August or September 2009, is

refuted by the record. Indeed, the record reflects that, during this ten-month period, Plaintiff underwent multiple dental procedures. *See generally* Exhs. B and C.

Further, assuming *arguendo* that the facts support a finding that Plaintiff's "rotten teeth" or periodontal disease were objectively serious dental needs, the Court finds no facts in the record to demonstrate that either Defendant Perez-Carillon or Defendant Glanton responded to Plaintiff's dental conditions with deliberate indifference. The record before the Court reflects that, on June 9, 2008, Plaintiff requested to be put on the list to see a dentist. Exh. B-2. In his request for dental treatment, Plaintiff did not complain that he was experiencing any discomfort or was in any pain. *Id*. Instead, Plaintiff stated only that, in his opinion, he required a cleaning, some fillings and had "three teeth in front on the bottom that **might** need pulled." *Id*. (emphasis added). In response to his request, Plaintiff was placed on the dental call-out list, which had a three-month wait time, but was advised that he could access "sick call" if he developed a problem prior to his scheduled appointment. *Id*. Approximately thirty days later, Plaintiff requested to be placed on "sick call," and was advised by staff, on July 17, 2008, that there are not "call outs" for sick call, instead he needed to "show up" for sick call. Exh. B-3. Sometime thereafter, Plaintiff apparently presented himself to sick call, as he was examined by Defendant

Perez-Carillo on July 28, 2008. Exh. B-4. Defendant Perez-Carillo, after obtaining Plaintiff's consent, extracted teeth numbers 24, 25, and 25, which were "loose due to periodontal disease." Exh. B at2, ¶5. Plaintiff was provided medication for pain and/or discomfort. *Id.*

There is no evidence in the record to support Plaintiff's claim that either Defendant Perez-Carillo or Glanton refused to provide Plaintiff with dental care or ignored Plaintiff's request for dental care. To the contrary, the evidence shows that when Plaintiff accessed sick call he was seen by the treating dentist well before his three-month scheduled appointment, was examined, treated, and provided with extensive follow-up care.

The record further demonstrates that Plaintiff was given a complete dental examination eight weeks later, during which an individualized treatment plan to deal with Plaintiff's periodontal disease was developed that included root planning, fillings, cleanings, and extractions. Exh. B-1, B-5. According to the developed treatment plan, Plaintiff was to be fitted for partial plates upon the completion of the required dental procedures. *Id*. Moreover, Defendants performed a scaling of the roots of Plaintiff's teeth and prescribed medication to treat Plaintiff's periodontal disease and ease any pain Plaintiff might experience. *Id*. As evidenced by the record and contrary to the allegations in the Complaint, Plaintiff was provided with dental appointments,

examinations, and treatment throughout the ten-month period that he claims he was denied any dental care. Consequently, there is nothing in the record to suggest, yet alone demonstrate, that Plaintiff was needlessly subjected to pain and suffering.

Nor does the Court find any evidence to support a claim based upon a delay in medical treatment. Indeed, the Court finds, at most, an eleven-day delay between when Plaintiff was told to report to sick call and when Plaintiff was seen by Defendant Perez-Carillo, during which time Plaintiff neither complained that he was in pain, nor that he required immediate care. Further, Plaintiff has not provided any evidence that this eleven-day delay in being provided with dental services was detrimental to his dental health. The record, however, supports a finding that Defendant A. Perez-Carrillo "provided [Plaintiff] sufficient and adequate dental services during the relevant time periods." Exh. E. As noted by dental staff, "the duration of time between extractions was necessary due to the condition of Plaintiff's mouth upon arrival at Lake C.I." Exh. B at 7, ¶14. Because Plaintiff was already missing several teeth, "the extractions were preformed (by quadrants); Plaintiff was given time between extractions to recuperate while still having the other areas of his mouth accessible for chewing and eating." *Id*.

Plaintiff's self-assessment that he should be transported to Lake Butler, or that he was not receiving the dental treatment he

thought he required is not sufficient to sustain a finding of deliberate indifference. *Harris v. Thigpen*, 914 F.2d 1495, 1501 (11th Cir. 1991)(citations omitted)(finding that a "simple difference of medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not support "a claim of cruel and unusual punishment.").

As explained by dental staff, Plaintiff's request for partial plates is premature because he "has not finished his treatment plan." Exh. B at 7, ¶14. Pursuant to the Florida Department of Corrections's policy, an inmate is first required to complete a treatment plan prior to being fitted for any dentures. *Id*. As of the date of the Motion, Plaintiff still required "two fillings, one tooth extraction and a final root planning." *Id*. To the extent Plaintiff complains that he is experiencing any difficulty eating, Plaintiff can request to receive a soft diet pursuant to the Department's regulations. *Id*.

Based upon the undisputed material facts set forth above, the Court finds that Plaintiff cannot show that Defendant Perez-Carrillo or Defendant Glanton violated Plaintiff's Eighth Amendment right by exhibiting an act of deliberate indifference. In particular, the record demonstrates that Plaintiff received regular dental treatment from his arrival at Lake C.I. through September 30, 2010, when he refused further dental treatment. Therefore, the

Court finds that Defendants Perez-Carrillo and Glanton are entitled to summary judgment on Plaintiff's claim as a matter of law.

ACCORDINGLY, it is hereby

**ORDERED and ADJUDGED:**

1. Defendants A. Perez-Carrillo and Dimitra Glanton's Motion for Summary Judgment (Doc. #24) is **GRANTED** and this case is **dismissed with prejudice**.

2. Defendants A. Perez-Carrillo and Dimitra Glanton's Motion To Dismiss is **DENIED** as moot.

3. The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions; and close this file.

**DONE AND ORDERED** in Fort Myers, Florida, on this 14th day of April, 2011.

Charlene Edwards Honeywell
United States District Judge

SA: hmk

Copies: All Parties of Record